City of Philadelphia, Appellant, *v.* Bernard J. Murphy, Appellee.

Argued April 4, 1974, before Judges KRAMER, WIL-
KINSON, JR. and BLATT, sitting as a panel of three.

*John M. McNally, Jr.,* First Deputy City Solicitor, with him *Nicholas Panarella, Jr.,* Assistant City Solicitor, *James M. Penny, Jr.,* Assistant City Solicitor, *John Mattioni,* Deputy City Solicitor, and *Martin Weinberg,* City Solicitor, for appellant.

*Yale B. Bernstein,* with him *Stanley Bashman* and *Bashman, Wertheimer, Kane, Manfredi & Byrne,* for appellee.

OPINION BY JUDGE BLATT, May 29, 1974:

On April 2, 1971, Bernard J. Murphy (claimant), a member of the Philadelphia Police Department since 1954, was assisting another officer in subduing a struggling prisoner, when he was allegedly struck on the left side of the head. He continued working, and apparently did not report the incident. The next day, he began to have headaches, and he felt bad enough on April 6, 1971 to see first his family doctor and then a physician from the Police and Firemen's Medical Association Clinic. Still in great discomfort, he was referred to Dr. Axel K. Olsen, a physician retained by the City of Philadelphia (City), to whom he complained of difficulty with memory and speech and of a left frontal and orbital head pain. Dr. Olsen subsequently reported that the claimant had "an occlusion of the left middle cerebral artery. . . ." He was hospitalized for a period of twenty days and was unable to return to duty until February 18, 1972.

Disability benefits were claimed under Regulation 32 of the Philadelphia Civil Service Commission (Com-

mission), and the claimant had a conference on September 15, 1971 with a "safety officer" appointed by the Police Department. After considering evidence presented by the claimant, the "safety officer" found that no proof had been presented that the claimant's difficulties were causally related to the blow on his head, and that, therefore, his disability was not service-connected. The Police Commissioner approved these findings and denied benefits. The claimant then appealed to the Commission, which also found a lack of evidence as to causation and held the disability not to be service-connected. The claimant next appealed to the Court of Common Pleas of Philadelphia County and presented to that court a letter from Dr. Olsen concerning the claimant's condition, which allegedly indicated that Dr. Olsen would be willing to testify as to causation.[1] The court decided that this letter should be evaluated by the Commission and remanded the case "with a direction that the Commission impanel a panel of three neurologists, or three neurosurgeons, or any combination of three such specialists. Following their report, the Commission will evaluate same and render its Opinion and Order." The City has now appealed this remand order of the court below to this Court.

We have recently considered the application of Regulation 32 and the procedures involved thereunder in *City of Philadelphia v. Hays,* 13 Pa. Commonwealth Ct. 621, 320 A.2d 406 (1974). As we pointed out there, appeals from the Commission are taken to the lower court pursuant to the Local Agency Law, Act of Dec 2,

---

[1] On the question of causation, the letter stated, in pertinent part: "The connection between the head blow and occlusion of the blood vessel is one that has caused considerable discussion among neurologists and neurosurgeons and the general opinion is that this is a rather uncommon complication, but one which does occur, and in my opinion this is the situation with Mr. Murphy. The exact connection cannot be established. I hope this is satisfactory."

1968, P.L. 1133, 53 P.S. §11301 et seq. On appeals therefrom to this Court, when, as here, the lower court has not held a hearing de novo, we held that our scope of review is limited to a determination of whether or not (1) the constitutional rights of the appellant were violated by the Commission or (2) the Commission manifestly abused its discretion or committed an error of law, and (3) the findings of fact made by the Commission are supported by substantial evidence. We also held that, in considering claims brought pursuant to Regulation 32, the procedures to be followed are those set forth in the said regulation, in the City Home Rule Charter, and in the Local Agency Law, and, as to substantive questions, we approved the use of appropriate precedents under the Workmen's Compensation Act[2] relating to similar issues arising under Regulation 32.

A review of the record indicates that the Commission was undoubtedly correct in its finding that the claimant failed to establish a causal connection between the alleged blow on his head and his subsequent disability. The evidence consisted only of the claimant's testimony, plus letters and reports from physicians, and hospital records. Nowhere is there any medical evidence whatever specifically linking the blow on the head to the diagnosed occlusion of the left middle cerebral artery, and yet, as we noted in *Hays, supra,* the burden is clearly on the claimant to establish his eligibility for disability payments under Regulation 32. It is difficult to understand why the claimant failed to introduce any expert medical testimony on the issue of causation, especially after the departmental "safety officer" pointed out that there was no evidence of causation. It is true that the claimant indicates in his brief before this Court that the Commission discourages, or even refuses to permit, the introduction of

---

[2] Act of June 2, 1915, P. L. 736, *as amended,* 77 P.S. §1 et seq.

expert medical testimony, and if this is correct, we might find it to be a questionable practice. But here the record reveals neither any attempt to present such testimony nor any action by the Commission at all discouraging its use. At the Commission hearing, there was simply no attempt made to introduce reports or depositions of medical experts which would have borne on the issue of causation.

It is true, of course, that proof of causal connection does not always depend solely upon medical testimony. *McCleary v. Pennsylvania Electric Company,* 184 Pa. Superior Ct. 185, 132 A. 2d 389 (1957). But where, as here, there is "no obvious causal relationship between the employee's injury and the alleged accident unequivocal medical testimony is necessary to establish the causal connection." *Hagner v. Alan Wood Steel Company,* 210 Pa. Superior Ct. 473, 476, 233 A. 2d 923, 925 (1967). And, when a medical witness offers testimony in such a case, he must testify "not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion, the result in question did come from the assigned cause." *Miller v. Springfield Township Highway Department,* 202 Pa. Superior Ct. 616, 624, 198 A. 2d 399, 403 (1964). The claimant here has clearly failed to meet this burden.

The only possible evidence of causation presented by the claimant was a letter introduced, not in his hearing before the Commission, but in his argument before the lower court. This was a letter written two months after the issuance of the Commission's adjudication by a doctor who had been available to the claimant at the time of the Commission's hearing and whose diagnosis had already been introduced. It is true, of course, that, as provided in Section 8(a) of the Local Agency Law, 53 P.S. §11308(a), if the court below believed that a "full and complete record of the

proceedings" before the Commission had not been made, it could have heard the matter de novo or remanded it to the Commission for the purpose of making a full and complete record. We believe, moreover, that a lower court has a wide discretion in determining whether or not a full and complete record has been made[3] and, if not, what course to follow to correct the situation. If, for example, the proofs introduced by a party are incompetent,[4] or if after-discovered evidence is made available, or if the Commission had capriciously ignored or improperly excluded material evidence, we would hold that a lower court might reasonably remand for another hearing. But we believe that in a situation such as this, where the claimant made no effort to introduce evidence on a material issue before the Commission, although he then had the evidence available, the lower court should have treated the case as if a full and complete record had already been made below and should not have remanded.

The claimant argues that the remand order of the court below was interlocutory and that an appeal therefrom to this Court is premature. While we agree that it is only in rare cases that we will find a remand order to be appealable, we believe that the decision in *Williams v. Bonair Foundry Company,* 215 Pa. Superior Ct. 357, 257 A. 2d 69 (1969), is applicable here, and that this, too, is a case where a remand order is appealable. As the court said in *Williams, supra*: "In the instant case the order was not made to clear ambiguous testimony in the record or because the Board capriciously disregarded evidence but was in effect the direction of a rehearing by calling a witness

---

[3] If the lower court determines that a full and complete record of the proceedings has been made it proceeds pursuant to Section 8(b) of the Local Agency Law, 53 P.S. §11308(b).

[4] *See Kocher v. Kocher,* 300 Pa. 206, 150 A. 468 (1930).

who had been available in the original hearing and was not called.

"The court below admits that under the record the claimant has failed to sustain his burden but in effect is saying call more medical testimony so that the record may be expanded by a witness who was available and not called in the first place and concerning whose testimony we can only speculate. If this order is upheld then every case where a claimant fails to sustain his burden of proof the court may order the taking of additional testimony outside the record so that the claim may possibly be sustained or in the vernacular give the claimant 'another bit of the cherry.'" 215 Pa. Superior Ct. at 363, 257 A. 2d at 71-72.

As to the other issues raised by the claimant, we have dealt with them in *Hays, supra,* and adopt our holding therein.

For the above reasons, therefore, we reverse the order of the court below and reinstate the order of the Commission denying benefits to Bernard J. Murphy.